## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

MARIA GALLEGOS,            )
      Plaintiff,           )
                        )
v.                     )      No. EP-12-CV-0038-RFC
                        )
MICHAEL J. ASTRUE,        )
Commissioner of the Social     )
Security Administration,        )
      Defendant.        )

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

On June 26, 2008, Plaintiff filed her applications for DIB and SSI, alleging disability due to impairments that became disabling on January 1, 2008. (R:146, 151-158)[1] The applications

---

[1] Reference to documents filed in this case is designated by (Doc. [docket entry number(s)]:[page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by (R:[page number(s)]).

were denied initially and on reconsideration.  (R:58-63, 69-72)  Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing to review Plaintiff's application *de novo* on February 22, 2010, at which Plaintiff was represented by an attorney and testified through a Spanish interpreter.  (R:33-52, 73-74)  The ALJ issued his decision on September 29, 2010, denying benefits.  (R:10-28)  Plaintiff's request for review was denied by the Appeals Council on December 7, 2011.  (R:1-6)

On February 7, 2012, Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis*.  (Doc. 1)  The motion was granted and her complaint was filed. (Doc. 4)  The Commissioner filed an answer and transcript of the administrative proceedings on April 12, 2012. (Docs. 12, 13)  On May 31, 2012, Plaintiff's brief was filed.  (Doc. 16)  On June 22, 2012, the Commissioner filed his brief in support of the decision to deny benefits.  (Doc. 18)  Plaintiff filed a reply brief on July 2, 2012.  (Doc. 19)

## ISSUES

Plaintiff claims that the ALJ's determination, specifically his RFC finding, is not supported by substantial evidence.  Plaintiff presents three grounds for reversal or remand:

 (1) The ALJ failed to accommodate Plaintiff's mental impairment;

 (2) The ALJ failed to accommodate limitations from Plaintiff's hypertension and diabetes;

 (3) The ALJ failed to include a sit/stand option to accommodate Plaintiff's osteoarthritis and obesity.

(Doc. 16:2-3, 4, 8, 11)

## DISCUSSION

**I.**     *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In reviewing the substantiality of the evidence, a court must consider the record as a whole and must take into account whatever in the record fairly detracts from its weight.  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*.  *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989).  It may not substitute its own judgment even if the evidence preponderates against the [Commissioner's] decision, because substantial evidence is less than a preponderance.  *Harrell v. Bowen*, 862 F.2d

471, 475 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, and not the courts, to resolve.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## II.    *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work.   20 C.F.R. § 404.1520.   A person's residual functional capacity (RFC) is what he can still do despite his limitations or impairments.  20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

### III.    *The ALJ's Hearing Decision*

First, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since January 1, 2008.  (R:18)  At the second step, applying the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the ALJ found that Plaintiff had the following severe impairments: depression, obesity, and osteoarthritis.  (*Id*.)  The ALJ also found that Plaintiff had the following non-severe impairments: diabetes mellitus type II and hypertension.  (*Id*.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments.  (R:19-20)  The ALJ determined that Plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (R:20)  At the fourth step, the ALJ found that Plaintiff is capable of performing her past relevant, medium, and unskilled work as a laundry worker as generally performed, Dictionary of Occupational Titles 361.685-018.  (R:23)  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of the decision.  (R:23)

### IV.    **Mental Impairment**

Plaintiff claims that the ALJ's RFC determination, including no terms to accommodate limitations caused by Plaintiff's depression, is not supported by substantial evidence.  (Doc. 16:4)  She contends that the ALJ's finding pursuant to *Stone*, that Plaintiff's depression had at least a minimal effect on Plaintiff's ability to work, necessitates some accommodation in Plaintiff's RFC.  (*Id*.)  Further, Plaintiff asserts that the ALJ's consideration of Plaintiff's mental

5

impairment was deficient, arguing that the ALJ improperly relied on Plaintiff's minimal activities of daily living and failed to accord Dr. Fernandez's opinion proper weight in the absence of a conflicting opinion from an examining psychiatrist or good cause.  (Doc. 16:5-6) Plaintiff advances three limitations that should have been accomodated in Plaintiff's RFC: an inability to work in a high-stress or a fast-paced environment and an inability to work consistently for 8-hour days.  (Doc. 19:2)  Plaintiff argues that the ALJ's failure to properly assess Plaintiff's RFC prejudiced Plaintiff and requires remand.  (Doc. 19:3)

The Commissioner responds that, even assuming the ALJ committed error by not specifically stating mental limitations in Plaintiff's RFC, it is not reversible because Plaintiff cannot demonstrate that a perfectly written decision on remand would change the ultimate result that Plaintiff is not disabled.  (Doc. 18:4) The Commissioner argues that the record does not clearly indicate that depression, rather than her education level and physical conditions, was the source of any of Plaintiff's limitations.  (Doc. 18:7) Even if it were, the Commissioner asserts that Plaintiff's depression was situational and thus inappropriate as a basis for finding disability. (Doc. 18:6-7)  The Commissioner also points out Plaintiff's failure to seek or obtain treatment for much of the application period and that because Plaintiff began taking medication for depression right before the hearing, Plaintiff was unable to demonstrate that the impairment could not be controlled with reasonable treatment.  (Doc. 18:4-6)

The record evidence as to Plaintiff's mental impairment of depression is as follows.  In her application for benefits, Plaintiff listed depression as one of the illnesses limiting her ability to work, but in explaining how her impairments limited her ability to work she mentioned only

constant pain especially in her legs and joints.  (R:173)  She answered that she had not been seen by a doctor or treated for either physical or mental problems.  (R:175)  In her face-to-face interview submitting her application on June 26, 2008, the interviewer noted that Plaintiff seemed to have trouble concentrating and appeared to be depressed about her bad health and poor financial situation.  (R:180)

In her July 14, 2008 function report, Plaintiff indicated that she did not need reminders or encouragement to perform any of her daily activities.  (R:189-194)  She also answered that she spends time with others grocery shopping and going out to eat.  (R:191)  She did not need to be reminded to go places and had no problems getting along with others.  (R:191-192)  When checking off the abilities affected by her impairments, she did not check off memory, completing tasks, concentration, understanding, following instructions, or getting along with others, nor did she include any mental limitations in her written description.  (R:192)  She did not answer how long she was able to pay attention, but stated that she did finish what she started, was fair at following written instructions, and was good at following spoken instructions.  (*Id.*)  She stated she was good at getting along with authority figures, and was good at handling changes in routine, but did not handle stress too well.  (R:193)  She had not noticed any unusual behavior or fears.  (*Id.*)  Based on these answers, Laura Goodwin determined on August 5, 2008, that although Plaintiff alleged depression, Plaintiff did not appear to have any programmatically significant limitations from a mental or emotional condition, and therefore no further investigation was warranted at that time.  (R:195)

Plaintiff reported to Dr. Jaime Midez, M.D., on July 16, 2008 that she felt sad, fatigued, cries frequently, has headaches and joint pain, and feels tired all the time.  (R:228)  Dr. Midez assessed Plaintiff as "depressed."  (R:229)

When Plaintiff was seen at Thomason on August 17, 2008, her mentation was noted only as cooperative, not confused, depressed, lethargic, or anxious.  (R:238-39)

On November 7, 2008, Plaintiff filled out another disability report.  (R:196-198)  In that report, Plaintiff alleged that she had new mental limitations beginning approximately July 15, 2008, including depression and memory loss.  (R:200)  She answered that she had not seen anyone for any mental or emotional problems.  (*Id.*)

In her function report dated December 2, 2008, Plaintiff stated that she had insomnia, she needed help or encouragement doing house and yard work—her son did most of the cleaning, she no longer spent time with others, but she still had no problem getting along with others, and she was less active socially and with her hobbies.  (R:206-211, 213)  Plaintiff checked off that her affected abilities included memory, completing tasks, concentration, understanding, and following instructions.  (R:211)  She answered that she could pay attention as long as its needed, but that she no longer finished what she started, did not do well following written instructions, but still did well following spoken instructions.  (*Id.*)  She still had no problems with authority figures, still did not handle stress well, still did well handling changes in routine, but she reported that she fears everything and everyone around her.  (R:212)

Plaintiff was referred for and underwent a mental status examination by Dr. Peter Fernandez, Ph.D., Clinical Psychology and Neuropsychology, on January 12, 2009, based on her

allegations.  (R:289)  Plaintiff's subjective complaints included nervousness and unhappiness for the past several years, which she attributed to being unemployed and being worried about finances.  (*Id.*)  She reported feeling sad and scared that day and in the past weeks; she also reported sleeplessness, low energy, frequent crying, and difficulty in concentration and memory. (*Id.*)

Dr. Fernandez's observations of Plaintiff include the following.  Plaintiff arrived promptly for the appointment, was casually dressed and neatly groomed, and her hygiene was good.  (R:289-90)  Plaintiff was alert, fully oriented to person, time, place, and circumstance, and spoke coherent, fluent, and intelligible Spanish.  (R:290)  Plaintiff's thought content reflected worry about lack of money, unemployment, and her physical ailments including discomfort in her stomach, legs, and knees.  (*Id.*)  Plaintiff's affect was broad, she occasionally smiled, she did not tear up during the exam, and her mood was mild-to-moderately dysphoric, reflecting unhappiness and anxiety.  (*Id.*)  He stated that her interpersonal stance was cooperative, but that she initially blinked in a nervous manner and emphasized her physical ailments and that her blinking subsided once it was labeled and she was provided reassurance. (R:292)

Dr. Fernandez's clinical testing of Plaintiff reflected adequate numerical sequencing/mental control, backward oral-spelling/basic concentration, verbal repetition, delayed verbal-recall, simple written-expression, basic reading, and practical judgment.  (R:290) Plaintiff also demonstrated weak alphabetical sequencing, mental calculation, and high-level arithmetic, subtly-weak immediate verbal recall, and mildly-weak verbal abstract reasoning.

(*Id.*)  Dr. Fernandez stated that some of Plaintiff's weaknesses correlates to her weak academic attainment and possible variable concentration.  (R:289-305)  Plaintiff attended school in Mexico to the fifth grade and repeated the first grade because she had difficulty learning or remembering things.  (R:291)

In describing the history of Plaintiff's presenting illness, Dr. Fernandez discussed Plaintiff's physical problems with her stomach.  (R:291)  Dr. Fernandez did not indicate that there were any limitations in Plaintiff's activities of daily living that were attributable to sadness, nervousness, or any other mental condition.  (*Id.*)  Plaintiff again reported that she had not sought any psychiatric treatment for depression.  (*Id.*)

Dr. Fernandez diagnosed Plaintiff as follows. Axis I: major depressive disorder, single episode, moderate.  (R:292)   Axis II: Diagnosis deferred "rule out borderline intellectual functioning."  (*Id.*)  Axis III: "reported discomfort to her stomach and legs/knees, not presently consuming any medication. Deferred to medical exam."  (*Id.*)  Axis IV: "Unemployment, limited employment skills, inadequate finances and health insurance."  (*Id.*)   Axis V: "Moderate impairment in social functioning (55) and a serious impairment in vocational functioning (48)." (*Id.*)

On January 15, 2009, Dr. Mark Schade, Ph.D., a state appointed medical consultant, reviewed Dr. Fernandez's report, along with  the rest of the record, in completing the Psychiatric Review Technique form assessing Plaintiff's mental limitations.  (R:293-306)  Based on the category of affective disorders, Dr. Schade found that a medically determinable impairment is present—major depressive disorder, single episode, moderate—that does not precisely satisfy

10

the diagnostic criteria.  (R:296)  Dr. Schade found no episodes of decompensation, only mild restriction on Plaintiff's activities of daily living, and moderate difficulties in maintaining both social functioning and concentration, persistence, or pace.  (R:303)  In the Consultant's notes, he stated that while Plaintiff was not currently receiving or seeking treatment for depression, the consultative examiner had established the existence of a medically determinable impairment of mood disorder.  (R:305) Although he states that the alleged limitations are partially credible as depicted by medical and other evidence in the file, he does not state to what limitations he refers. (R:305)   The notes repeat that Plaintiff: was prompt, arrived unaccompanied via public transportation, had good hygiene; was appropriately dressed, fully oriented, coherent in speech and thinking; had adequate cognition; was able to care for herself, follow verbal instructions, handle changes in routine; did not need reminders for personal care or medications; and was able to leave the house alone.  (R:305)  The only note supporting a finding of limitations is that Plaintiff's mood was mild to moderate dysphoric, reflecting unhappiness and anxiety.  (R:305)

In the Mental Residual Functional Capacity Assessment, Dr. Schade opined that Plaintiff was not significantly limited in most areas of functioning.  (R:307-309)  Plaintiff was moderately limited in three areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R:307-308)  In elaborating on his findings, Dr. Schade stated that Plaintiff could "understand, remember, and carry out detailed but

11

not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions; and respond to changes in a routine work setting."  (R:309)

In the next Disability Report in the record, submitted on January 27, 2009 (R:222), Plaintiff answered that there had been no change in her condition, no new limitations and no new conditions.  (R:219)  She still had not seen anyone for any mental or emotional condition.  (*Id.*)

Records from Plaintiff's trip to the University Medical Center on February 4, 2010, reflect that Plaintiff was seeking treatment for heaviness, tightness, and pressure in her chest radiating pain to her left arm and left side of her neck; Plaintiff denied anxiety and did not describe any symptoms of depression or report any history of depression.  (R:326)  Her psychological state was described as alert, oriented, normal, and cooperative.  (R:327, 330)

Plaintiff testified that she stopped working because she felt sick and could not stand for long periods of time, because she had problems with her stomach since she had a C-section in 1983, and because she was diabetic and had cholesterol and blood pressure problems and could not walk for long periods of time; she did not mention depression, concentration, or memory loss until prompted by the ALJ's questions.  (R:40-41, 43, 46, 50)  Plaintiff testified that she had just started taking prescription medication for depression a few days before the hearing and denied previously having taken any depression medication.  (R:43)  She testified that the medication was prescribed at the same time her medication for high blood pressure was prescribed, on February 4, 2010.  (R:41,43)  She testified that she had had memory problems since 2008 and had told her doctors about it, but that they had not given her any explanation for it other than that it is because of the illnesses she has.  (R:46-47)  She testified that since May 2008 she had

trouble with her concentration, she felt she was unable to concentrate because she could not understand things and she would forget things; she did not explain which of her illnesses she believed to be the source of these alleged problems. (R:50)

First, Plaintiff argues that having found Plaintiff's depression severe pursuant to *Stone*, the ALJ must necessarily find that Plaintiff's RFC is limited in some way by her depression. (Doc. 16:4, 19:2) This argument is unavailing. The standard in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), is that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Thus, a finding that an impairment is severe indicates only that one might expect the impairment to interfere with the ability to work. This is a threshold question; whether and how the impairment *actually* interferes with the ability to work is not determined until that threshold has been breached. *See* 20 C.F.R. § 404.1520. Further, Dr. Fernandez's report suggests that Plaintiff's limitations were at least in part due to her low level of academic achievement, rather than any mental impairment, and education is not taken into account, if at all, until step five. *Id*. However, the ALJ did find some limitations in his discussion; although he failed to include them in his statement of Plaintiff's RFC in the heading of his decision. (See R:20-23)

Second, Plaintiff contends that the ALJ inappropriately relied on evidence of Plaintiff's minimal daily activities to support a finding that Plaintiff's alleged symptoms were not credible. (Doc. 16:4-5 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997))) The Court notes

that the ALJ did not rely *solely* on Plaintiff's activities of daily living in determining her credibility regarding the severity of the symptoms and limitations caused by her depression. The ALJ also found that Plaintiff's alleged limitations were undermined both by the medical evidence of record and Plaintiff's failure to seek treatment.  (R:22)  Further, it is appropriate for an ALJ to consider the number and type of activities in which a Plaintiff engages when assessing the RFC.  *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).  In fact, the ALJ was required to consider Plaintiff's activities of daily living to assess the severity of Plaintiff's mental impairment, *see* 20 C.F.R. § 404.1520a(c)(2)-(3), Pt. 404, Subpt. P, App. 1, § 12.00(A), (C)(1), and was permitted to consider them to evaluate the credibility of Plaintiff's subjective complaints of her symptoms.  *See* 20 C.F.R. § 404.1529(c)(3), (4).

The ALJ found that the daily activities Plaintiff described were not limited to the extent one would expect given her complaints of disabling symptoms and limitations.  (R:22)  With respect to Plaintiff's mental impairment, she vaguely alleged problems with her concentration and memory and feeling sad.  (R:21)  Yet she reported that her ability to follow instructions was fair to good, and that she was able to perform daily activities such as preparing meals, doing laundry, grocery shopping, taking public transportation, and taking care of her grandson, that require both concentration and memory and that she was able to do such activities independently without reminders.  (R:22)  Plaintiff's own responses in her Function Report-Adult dated December 2, 2008, are contradictory regarding her alleged problems with concentration; she checked that her condition affected her concentration, but also responded that she could pay attention "as long as its needed."  (R:211)  She also checked that her memory, ability to

14

complete tasks, understanding, and ability to follow instructions were affected by her condition and that she does not finish what she starts, but responded "I do well" to how well do you follow spoken instructions, which would require all of those abilities.  (*Id.*)  The Court does not find that the ALJ's consideration of Plaintiff's activities of daily living was improper.

Third, Plaintiff asserts that the ALJ failed to weigh the various medical opinions properly.  (Doc. 16:6)  Plaintiff alleges that the ALJ did not identify any conflicting evidence of record and that there was no conflicting psychological examination in the record.  (Doc. 16:6-7; R:289-292)  Plaintiff argues that the ALJ, therefore, gave undue weight to Dr. Schade's opinion and failed to show good cause for giving less weight to Dr. Ferndandez's opinion as the examining doctor, erroneously finding that his opinion was based on Plaintiff's subjective reports. (*Id.*)

The regulations provide "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d).  They go on to provide that generally, more weight will be given to an examining source's opinion than one who has not examined the Plaintiff, to a treating source's opinion than a non-treating source because the treating source is likely to be "most able to provide a detailed, longitudinal picture of your medical impairment(s)," to opinions supported by relevant evidence and explanation, to opinions consistent with the record as a whole, to opinions of a specialist, and to opinions of sources familiar with the disability programs and their evidentiary requirements and who are more familiar with the other information in the case record.  20 C.F.R. § 404.1527(d)(1)-(6).  The

15

Fifth Circuit has held that "[a]n ALJ may not reject a medical opinion without an explanation and must show good cause for doing so." *Butler v. Barnhart*, 99 Fed. App'x 559, 560 (5th Cir. June 2, 2004) (finding ALJ erred by failing to consider the opinion of the state agency medical consultant who provided an RFC assessment and by failing to provide good cause for rejecting it) (citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (addressing rejecting opinion of treating physician); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (same))). Similarly, Social Security Ruling (SSR) 96-8p states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (Doc. 16:7; SSR 96-8p)

The ALJ considered Plaintiff's alleged limitations in light of her own subjective reports regarding what she is able to do, and found that her testimony as to the symptoms and limitations caused by her severe impairments were exaggerated. (R:22) The ALJ also considered in detail the medical opinions of both Dr. Fernandez and Dr. Schade. (R:21-23) He gave Dr. Fernandez's findings and diagnosis, including the GAF scores of 55 and 48, little weight only to the extent they were inconsistent with his RFC assessment. (R:23) The explanation he provided was that they were based on Plaintiff's subjective complaints and were not consistent with the medical evidence of record as a whole. (R:23) The reasons provided are in line with the factors the ALJ is charged with considering and provide good cause.

Plaintiff, however, insists that Dr. Fernandez's opinion should have been given greater weight because his findings were not based solely on subjective complaints, but also on psychological testing. (Doc. 16:6-7) It is true that Dr. Fernandez conducted clinical tests and

also reported his own observations of Plaintiff.  Plaintiff, however, performed adequately in most areas of the clinical tests, showing weakness only in her alphabetical sequencing, mental calculation, higher level arithmetic, and higher level thinking skills.  (R:290)  Dr. Fernandez attributed the weaknesses to Plaintiff's low educational attainment, and only stated that it might possibly be due in part to Plaintiff's alleged difficulty in concentrating.  (*Id.*)  Dr. Fernandez's observations of Plaintiff were likewise positive or neutral, except for noting that Plaintiff's mood was mild-to-moderately dysphoric, reflecting unhappiness and anxiety.  (*Id.*)  Thus, there was substantial evidence in the record for the ALJ to conclude that the main source of Dr. Fernandez's conclusion that Plaintiff experienced moderate impairment in social functioning and serious impairment in vocational functioning must have been Plaintiff's own subjective report that she felt sad and scared, had difficulty falling asleep and frequently awoke, cried frequently, had low energy, and had difficulty in concentration and memory.  Dr. Fernandez's assessment was also based solely on his interview and clinical exam of Plaintiff on one day, whereas Dr. Schade's assessment took into consideration not only Dr. Fernandez's report, but also all of the other medical evidence of record and Plaintiff's various reports filed to support her application.

Dr Schade found that Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  (R:303)  Dr. Schade's opinion indicates that Plaintiff experiences limitations from her mental impairment, stating that while Plaintiff's psychiatric symptoms did not wholly compromise her ability to function, Plaintiff was somewhat limited by these symptoms.  (R:305)  Dr. Schade, however, explained Plaintiff's limitations in more detail, more precisely, as a mere inability to understand and follow detailed instructions.

17

(R:309)  Despite his finding moderate limitations in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms," which also states "and to perform at a consistent pace without an unreasonable number and length of rest periods," Dr. Schade clarified in his notes that Plaintiff was able to "attend and concentrate for extended periods, accept instructions, and respond to changes in a routine work setting." (R:308-309)

The Commissioner contends that Plaintiff's allegations regarding her mental impairment are the type of complaints of depression resulting from situational problems, which do not fall within the ambit of a mental impairment contemplated as a basis for disability.  (Doc. 18:6 (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (reports of emotional distress and depression due to inability to work are insufficient to meet the burden of proving non-exertional mental impairment); *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations."); *McGehee v. Chater*, 83 F.3d 418, 1996 WL 197435 at *2 (5th Cir. 1996) (unpubl.) (Examples of situational depression are poor health, financial problems and marital discord))).  Even if it were, the Commissioner further argues that Plaintiff had not sought or obtained treatment from a mental health professional, and failure to seek treatment is relevant in determining the credibility of Plaintiff's subjective complaints.  (Doc. 18:4 (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (lack of treatment is an indication of non-disability)))  Nor had Plaintiff taken medication for depression until right before the hearing, so she could not show that her impairment had or would be expected to last for at least twelve months and could not be cured or controlled with reasonable

18

treatment.  (Doc. 18:5)  Plaintiff responds that the ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. (Doc. 19:2 (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)).   While the ALJ could have based his decision on such reasoning, the Court need not consider such alternative reasoning.

The fact remains that both Dr. Fernandez and Dr. Schade indicated functional mental limitations, some of which were accepted by the ALJ in his discussion of Plaintiff's RFC—namely, that Plaintiff could not understand, remember, or carry out complex instructions.  (R:23) Yet the ALJ did not include any accommodations for such mental limitations in his statement of Plaintiff's RFC, and he failed to provide any reason for such omission.  (Doc. 16:7; R:20-23, 289-92, 293-309)   Plaintiff asserts that she was prejudiced by the omission of such accommodations, which Plaintiff suggests should have included an inability to work in high-stress or fast-paced environments and to work eight-hour days on a consistent basis.  (Doc. 16:7 (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (Plaintiff must not only be able to obtain employment but also be able to maintain employment for a significant period of time))).

Plaintiff bears the burden of showing harm from any error committed by the ALJ.  *See Shinseki v. Simmons*, 556 U.S. 396, 409 (2009).  Even if the ALJ did err in stating Plaintiff's RFC, Plaintiff has not demonstrated that her depression would have precluded her ability to function as a laundry worker, and has thus failed to establish that her substantial rights have been affected.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The ALJ gave significant weight to Dr. Schade's opinion regarding Plaintiff's limitation in understanding and following detailed instructions.  (R:23, 309)  The accommodations Plaintiff

suggests, however, are not reflected in the ALJ's findings set forth in his discussion of Plaintiff's RFC.  (R:20-23)  Although Plaintiff did allege that she does not handle stress well, none of the ALJ's findings, nor even Dr. Schade's or Dr. Fernandez's findings, suggest an inability to perform in a high-stress position.  The only finding that might support an inability to work in a fast-paced setting or consistent eight-hour days, is Dr. Schade's finding that Plaintiff was moderately limited in sustained concentration and persistence, or in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms . . . ."  (R:308)  However, any support from such finding dissipates when read in conjunction with Dr. Schade's clarifying notes that Plaintiff could attend and concentrate for extended periods, which seems to indicate that while her symptoms of sadness or anxiety might arise during a work day, Plaintiff would still be able to attend to and concentrate on her work.

Plaintiff has not demonstrated that the laundry worker position would have been excluded by any of Plaintiff's suggested accommodations or any suggested by the ALJ's findings stated in his discussion of Plaintiff's mental RFC.  Plaintiff has not demonstrated that upon remand a more detailed discussion of her depression or an explicit inclusion of accommodations supported by the ALJ's findings would exclude Plaintiff's past relevant work and shift the burden to the Commissioner at step five.  To the extent the ALJ erred by not including the limitations he found to be caused by Plaintiff's mental impairment in his statement of Plaintiff's RFC, such error is harmless.  Plaintiff is not entitled to relief on this ground.

20

## V.     Hypertension and Diabetes

Plaintiff contends that the ALJ's RFC assessment also failed to account for limitations caused by Plaintiff's non-severe impairments of diabetes and hypertension, including headaches, dizziness, chest pain, and shortness of breath.  (Doc. 16:8-11)  An ALJ's RFC finding must include limitations from all of a claimant's impairments, even those that are not severe.   20 C.F.R. § 404.1545(e).  Plaintiff first argues that because such impairments were not considered in the ALJ's RFC assessment, the case must be remanded.  (Doc. 16:11)

At step two, the ALJ found Plaintiff's diabetes mellitus type II and hypertension to be non-severe impairments.  (R:18-19)  The ALJ discussed the contradictory information in the record regarding when Plaintiff was first diagnosed and when she was first prescribed medication.  (R:19)  The ALJ found that there were no medical records indicating Plaintiff was treated for complications arising from her diabetes or hypertension.  (R:19)  He did, however, recognize that she was hospitalized for chest pain, palpitations, shortness of breath, nausea, and headache on February 4, 2010, at which time a history of diabetes was noted, unstable angina and hypertension were diagnosed, and Plaintiff was prescribed medication.  (*Id.*)  The ALJ found that there was no medical evidence to support a finding of any limitations due to her diabetes mellitus or hypertension.  (*Id.*)  The ALJ repeated this conclusion in his discussion of Plaintiff's RFC.  (R:22)  Although the ALJ did not discuss Plaintiff's diabetes or hypertension at length in the section assessing Plaintiff's RFC, the ALJ's finding that there was no evidence of limitations streaming from Plaintiff's diabetes and hypertension sufficiently addressed how those conditions

21

would affect Plaintiff's RFC.    Thus, the ALJ sufficiently considered all of Plaintiff's impairments, both severe and non-severe in determining Plaintiff's RFC.

Plaintiff, however, also disputes the ALJ's determination that Plaintiff experienced no limitations from her diabetes and hypertension.  (Doc. 16:8-11, 19:4) Although Plaintiff argues that the ALJ's determination that Plaintiff's diabetes and hypertension were non-severe is also not supported by substantial evidence, Plaintiff does not argue that such impairments should have been found to meet or equal any of the Listed impairments at step three.  Consequently, whether the impairments are severe or non-severe, the critical issue is whether there is substantial evidence to support the ALJ's determination that Plaintiff experienced no functional limitations from her diabetes or hypertension.

The Court notes that Plaintiff does not suggest what functional limitations the ALJ should have found to result from Plaintiff's diabetes and hypertension or what accommodations for such limitations should have been included in the ALJ's statement of Plaintiff's RFC. Plaintiff discusses symptoms Plaintiff reported that can be associated with diabetes and hypertension.   Plaintiff argues that her symptoms and subjective complaints of headaches, dizziness, and chest pain are supported by the evidence of record during the relevant time period and are noted in the medical field to be symptoms related to hypertension and diabetes.  (Doc. 16:9)  The ALJ, however, considered all of these symptoms and more and likewise found that Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms.  (R:21)  The ALJ, however, found Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms to be not credible to the extent they

22

conflict with his RFC assessment. (*Id.*) Specifically, he found that Plaintiff has not generally received the type of medical treatment one would expect for a totally disabled individual and that Plaintiff's testimony regarding the symptoms and limitations caused by her impairments were exaggerated. (R:22)

There are medical records for only five occasions: July 2008 (R:228); August 2008 (R:236-242); September 2008 (R:260-273); May 2009 (R:320); and February 2010 (R:325-340). Both parties discuss Plaintiff's various glucose and blood pressure readings. (Doc. 16:9-10, 18:12, 19:3) Plaintiff's source states "Diabetes is diagnosed in persons with fasting blood glucose levels that are 126 mg/dL or higher." (Doc. 19:3 n. 1 citing *Glucose Test-Blood*, http://www.nlm.nih.gov/medlineplus/ency/article/003482.htm (July 2, 2012)) Normal blood pressure is below 120 systolic or below 80 diastolic; prehypertension blood pressure is 120-139 systolic or 80-89 diastolic; stage 1 hypertension is 140-159 systolic or 90-99 diastolic; and stage 2 hypertension is 160 or more systolic or 100 or more diastolic. (Doc. 19:4 n2 (citing High Blood Pressure (hypertension): Blood Pressure Chart, http://www.mayoclinic.com/health/blod-pressure/HI00043 (July 2, 2012)) At all levels it is recommended to maintain or adopt a healthy lifestyle. *Id*. At stage 1, if blood pressure goal is not reached in about six months, it is recommended to talk to your doctor about taking one or more medications. *Id*. At stage 2, it is recommended to talk to the doctor about taking more than one medication. *Id*.

In July 2008, at Plaintiff's physical consultative examination, Plaintiff's blood pressure was prehypertensive at 128/78. (R:228)

In August 2008, Plaintiff complained of abdominal pain related to her past C-section, she had an image taken of her abdomen pelvis, she rested with no complaints and in no distress, and was released. (R:236-242)  Plaintiff's glucose was 116, not at a diabetic level.  (R:236, 242). Plaintiff's blood pressure was taken ten times at intervals, with five showing normal blood pressure (114/57, 113/51, 94/76, 104/53, 114/61), three showing prehypertensive levels (136/48, 135/63, 130/72), one showing stage 1 hypertension (147/74), and one showing stage 2 hypertension (175/80).  (R:238, 240) Despite the outliers, the records do not reflect a diagnosis of hypertension or the prescription of medications to address Plaintiff's blood pressure.

In September 2008, Plaintiff complained of headache and dizziness accompanied by vomiting, and later of "chest cramps" denying pain or shortness of breath. (R:260-273)  Images were taken of her head and chest, she was prescribed medication for dizziness, pain, and nausea, and diagnosed with headache with unclear etiology and dizziness.  (*Id.*)  Her glucose was 150, a diabetic level.  (R:261)  Plaintiff's blood pressure was taken 17 times at intervals, with one normal reading (117/60), thirteen readings with prehypertensive levels (137/69, 127/70, 125/68, 131/74, 124/76, 125/77, 128/67, 131/70, 125/71, 139/82, 139/82, 132/85, 134/81), three stage one readings (154/98, 142/70, 143/77), and no stage two readings.  (R:267, 270-71)  Though her glucose tested at a diabetic level and some of her blood pressure readings reflected a Stage 1 hypertension, no mention was made of either diabetes or hypertension in her records or in her diagnosis, not even as risk factors, and no medication was prescribed for such conditions, despite the fact the records reflect that she was not currently taking any medications.  (*See* R:260-273)

In May 2009, for which the record contains only lab results, Plaintiff's glucose was initially tested at 391 and four hours later was tested at 250, both at diabetic levels.  (R:320-322)

In February 2010, Plaintiff complained of chest pressure with pain radiating down her left arm and the left side of her neck. (R:325-340)   It was noted that Plaintiff had recently been diagnosed with diabetes.  (R:329)  Plaintiff's glucose at the time was 123, not at a diabetic level. (R:325)  Plaintiff's blood pressure was initially prehypertensive at 128/79 and later was at stage 1 hypertension levels at 157/80.   (R:325) Plaintiff was diagnosed with unstable angina and Hypertension; risk factors were identified as diabetes, obesity, and family history of cardiac artery disease; and she was prescribed Glipizide and Metformin.  (R:326-327).  This is the only record in which either diabetes or hypertension are mentioned in the notes.

Although Plaintiff submitted a medications form that she had been diagnosed with hypertension and diabetes and had been taking prescription medications for these conditions since 2008, that form is contradicted by her testimony that she saw Dr. Hurting, who she listed as the prescribing doctor, for the first time in 2010, by her testimony that she had not taken any medications for diabetes or hypertension prior to starting the prescribed medication shortly before her hearing, and by her medical records which reflect that she was not taking any medications.  (R:41-42, 44-45, 225, 327)

The Commissioner argues that Plaintiff's subjective reports to the agency concerning her alleged impairments also do not demonstrate that either diabetes or hypertension caused any additional work-related limitations.  (Doc. 18:11)  Regarding her functional limitations, Plaintiff testified in 2010 that she does her housework in intervals because she wakes up sore and very

dizzy and gets dizzy spells; she could sew, wash plates, and dust furniture, but she could no longer sweep, mop, or do laundry.  (R:47)  However, when explaining her problems with walking, she mentions only that she is limited by pain in her legs, knees, and heels.  (R:48)  Her problems with sitting consisted of pain in her lower back and getting tired.  (*Id.*)  Her problem with lifting was pain in her lower back.  (R:49)

Her disability report filed in June 2008, listed abdominal pain, pain in all joints, dizziness, and depression as conditions limiting her ability to work, but in describing how such conditions limited her ability to work she alleged only that she is in constant pain especially in her legs and joints.  (R:173)

In a function report from July 2008, Plaintiff alleged that she was unable to bend down or bend over.  (R:188, 194) Plaintiff explained that her difficulty in lifting, bending, kneeling, sitting, walking up stairs, and walking was due to pain at the incision in her stomach. (R:192) Plaintiff stated that she was still able to do her laundry.  (R:189)

At her consultative examination with Dr. Midez, also in July 2008, Plaintiff complained of pain in her back and knees, feeling sad, fatigued, crying, having headaches, and secretion from the incision in her abdomen; she did not complain of dizziness, chest pain, or vision problems.  (R:228)

By November 2008, Plaintiff's blood pressure had already intermittently reflected stage one and two hypertension (August and September 2008) and her glucose had already shown diabetic levels (150 on September 2008). (R:238-40, 261, 270-71)  Yet, in her November 2008

report, Plaintiff claimed that depression and memory loss were her only new medical conditions. (R:198-202)

Again in her December 2008 report, Plaintiff did not complain of dizziness, headaches, fatigue, or chest pain, or any functional limitations resulting therefrom.  (R:207, 211, 213) Instead, Plaintiff explained that her limitations in her ability to dress, bathe, care for her hair, shave, feed herself, and use the toilet were due to severe pain from an infected cut on her stomach.  (R:207)  Although Plaintiff indicated her conditions limited her ability to squat, bend, kneel, and climb stairs, her explanation of how her conditions affected each of those activities stated only that she cannot lift or sit or be in one position for long periods of time.  (R:211)

At her evaluation with Dr. Fernandez on January 12, 2009, Plaintiff complained of pain in her legs and knees, stomach problems, nervousness, and unhappiness.  (R:289)  She reported low energy, but not headaches, dizziness, chest pain, blurred vision, or numbness and tingling of the hands and feet.  (*Id.*)

In a report submitted on January 27, 2009, Plaintiff denied any changes in her conditions or limitations.  (R:219-220, 222)  She stated that her conditions made it difficult to shower and groom herself and that she could not sit or stand too long, but that she could do light house chores.  (R:221)  Plaintiff did not file any other reports updating her conditions, limitations caused by those conditions, or any treatment for such conditions, though her medical records reflect lab tests in May 2009 and a hospital visit in February 2010.

Neither Plaintiff's medical records nor her own allegations establish functional limitations resulting from her diabetes or hypertension.  The burden to do so was on Plaintiff.

27

The ALJ's determination that there was no evidence that Plaintiff's diabetes and hypertension caused any functional limitations is therefore supported by substantial evidence.  Plaintiff is not entitled to relief on this ground.

## VI.    The ALJ failed to include a sit/stand option in Plaintiff's RFC

Plaintiff contends that she was prejudiced by the omission of a sit/stand option limitation in the ALJ's RFC determination where the record as a whole supports such a limitation.  (Doc. 16:11-13)  The Commissioner responds that it is the ALJ's responsibility to weigh the evidence and the court then determines whether there is substantial evidence in the record as a whole to support the ALJ's determination.   (Doc. 18:14)   The Commissioner contends that there is substantial evidence.  (*Id.*)

Plaintiff cites to evidence in the record that Plaintiff's diagnosed impairments of osteoarthritis and obesity result in pain and discomfort.  (Doc. 16:11 citing R:228, 229, 241, 282, 289, 331)  Plaintiff testified that she stopped working because she could no longer stand for long periods of time and the job had her mainly standing.  (R:40)  Plaintiff also testified that she has problems walking.  (R:48)  She could only sit for about fifteen minutes before experiencing lower back pain. (R:48-49)   The Disability Field Officer at intake observed Plaintiff having difficulty walking, but not with standing or sitting.  (R:180)

In July 2008, Plaintiff reported to Dr. Midez during her consultative examination that she had experienced back, knee, and joint pain for years related to her normal activities and that she was taking Tylenol 500 mg two tablets twice daily.  (R:228)  A lumbar spine x-ray at that time indicated Plaintiff's bones are osteopenic with bridging osteophytes, minimal listhesis at L4 in

relation to L5, endplate scalloping at L2-L3, and facet sclerosis, with an impression of lumbar spondylosis.  (R:230)  However, Dr. Midez did not find any weakness or atrophy in Plaintiff's extremities nor any gross motor or sensory deficits; instead he found that she demonstrated a full range of motion in all of her joints and had no inflammation or joint deformities, had a normal gait, and was able to walk on her toes and heels.  (R:228-29)  The absence of such objective factors, which can indicate the existence of severe pain, are relevant and can justify a conclusion of not disabled.  *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988); *see also Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir. 1979) (constant, unremitting pain generally results in "observable signs such as drawn features, expressions of suffering, significant weight loss and poor overall health").  Further, although Dr. Midez acknowledged Plaintiff's morbid obesity, he assessed "no impairment for activities of daily living."  (R:229)  The lack of physician-imposed restrictions likewise bears upon a determination of Plaintiff's alleged limitations and inability to work.  *Hollis*, 837 F.2d at 1387.

An abdominal computerized tomography (CT) on August 17, 2008, showed advanced degenerative changes in the spine. (R:241)  Dr. Durfor, a state agency physician consultant, and as such a "highly qualified physician[] . . . [and] expert[] in the evaluation of the medical issues in disability claims under the Act[,]" noted on August 28, 2008, the activities of daily living in which Plaintiff engaged, and opined that Plaintiff could perform medium level work, with the ability to sit, stand, and walk up to six hours in an eight hour work day.  (R:252, 258; SSR 96-6p)  Significantly, Dr. Durfor did not assess a sit/stand option.  (*Id.*)

When Plaintiff went to the hospital on September 11, 2008, complaining of headaches, she did not report any problems with walking, sitting, or standing, or indicate that she had a history of such problems.  (R:267-69)   Medical records do indicate that Plaintiff spent the majority of her stay at the hospital in bed or in a chair, making frequent though slight changes in her position.  (R:272)  It was noted that Plaintiff's mobility was slightly limited and that she walked occasionally during the day for very short distances with or without assistance.  (*Id.*)

In January 2009, when Plaintiff related her medical history to Dr. Fernandez, she did not report any limitations in walking, sitting or standing, she denied taking any medication for any condition, and she reported that she was independent in feeding and in most bathing and dressing.  (R:291)

In February 2010 when Plaintiff went to University Medical Center complaining of chest pain, she specifically denied any back pain, muscle pain, or joint pain, and examination reflected normal strength and ranges of motion, with no evidence of deformity, swelling, or tenderness. (R:326-30)

Plaintiff's medical records fail to demonstrate any limitation in Plaintiff's range of motion or muscular atrophy.  Nor do the records reflect that Plaintiff ever complained of or sought treatment for pain preventing her from sitting or standing for long periods of time.  The objective medical records do not support Plaintiff's claim that she required a sit/stand option, but they do provide substantial support for the ALJ's credibility determination and his RFC assessment.  Plaintiff is not entitled to relief on this ground.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff is not entitled to relief on any of the grounds presented.   The ALJ's decision is not the result of legal error and is supported by substantial evidence.   The Commissioner's decision is, therefore, **AFFIRMED**.


**SIGNED** and **ENTERED** on March 25, 2013.


_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE